THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| JOHN McCALLISTER HOOD, | ) | Case No.  1:12CV00033 DS |
| Movant, | ) | |
| vs. | ) | MEMORANDUM DECISION ADDRESSING 28 U.S.C. § 2255 MOTION |
| UNTIED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  INTRODUCTION

John McCallister Hood moves the Court to vacate, set aside or correct his sentence pursuant to 28 U.S. C. § 2255.  Mr. Hood was convicted after a jury trial of possession with intent to distribute fifty grams or more of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1).  He was sentenced to a term of life imprisonment and to 120 months of supervised release.  His conviction and sentence were affirmed on appeal.  By his present motion, Mr. Hood claims that his counsel was constitutionally ineffective.

## II.  FACTUAL BACKGROUND

Stacy Wilbert was a police informant whom officers discovered had started using and selling drugs again.  She identified Mr. Hood as her supplier and agreed with officers to arrange a drug deal with him for her regular amount, which was a quarter of a pound or approximately 113 grams.  She made several telephone calls to Mr.

Hood and asked him to bring drugs to her house.  Several hours later Mr. Hood, accompanied by another man, arrived at Ms. Wilbert's home carrying a backpack.  After he was placed under arrest, officers searched the backpack and found a large amount of methamphetamine inside of five plastic bags.

### III. DISCUSSION

### A.  Ineffective Assistance of Counsel

Mr. Hood asserts that his trial counsel was ineffective in the following respects: (1) failing to file a motion to suppress the drugs found in his backpack when he was arrested; (2) failing to properly inform him of the consequences of a life sentence if convicted; and (3)failing to call any witnesses at trial, including his toxicology expert, Dennis Crouch.  Mr. Hood also contends that the cumulative impact of these failures and the issues related to destruction of evidence, creates reversible error.

To establish an ineffective assistance of counsel claim, a party must establish two things: (1) that counsel's performance was deficient and (2) that the deficiency prejudiced petitioner's defense.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Counsel's performance is deficient if it "falls below an objective standard of reasonableness."  *Id*. at 690.  "'To be deficient, the performance must be outside the wide range of professionally competent assistance.  In other words, it must have been completely unreasonable, not merely wrong.'"  *Byrd v. Workman*, 645 F.3d

1159,1168 (10th Cir.)(citations omitted), *cert. denied*, 132 S. Ct. 763 (2011).   "[R]eview of counsel's performance under the first prong of *Strickland* is a 'highly deferential' one."   *Id*. (citation omitted).   Accordingly, "case law makes clear that '[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'... and that a petitioner 'bears a heavy burden' when it comes to overcoming that presumption".   *Id.* (citations omitted).

A defendant is prejudiced if it is shown "that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Failure to establish either of the two *Strickland* prongs is dispositive.   *Byrd, 645 F.3d at 1168* (citing *Strickland*, 466 U.S. at 697)).

## 1.  Motion to Suppress

Mr. Hood first asserts that his counsel was ineffective for failing to file a motion to suppress the drugs found in his backpack.   He contends that "[a]rguably once the officers took the backpack, they should have obtained a search warrant before searching it.   He was handcuffed and could not access the backpack. There was no prior evidence information or evidence linking the backpack to the drugs.   No report, surveillance or witness stated

that Hood had ever used a backpack to carry or transport illegal drugs."  Mem. Supp. at 19.

Mr. Hood's first position is rejected.  "Among the exceptions to the warrant requirement is a search incident to a lawful arrest."  *Arizona v. Grant*, 556 U.S. 332, 338 (2009)(citing *Weeks v. United States*, 232 U.S. 383 (1914).  Whether a search incident to arrest was valid is a two part inquiry.  First, a court must ask whether the arrest was lawful.  *United States v. Anchondo*, 156 F. 3d 1043, 1045 (10th Cir. 1998).  "Arrests must be based on probable cause.  Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested."  *Id.*  Police informant Stacy Wilbert identified Mr. Hood as her supplier and agreed to arrange a drug deal with him for her regular amount which was a quarter of a pound, or approximately 113 grams. She made several telephone calls to Mr. Hood and asked him to bring drugs to her house.  Several hours later, Mr. Hood arrived at Ms. Wilbert's home carrying a backpack.  After he was placed under arrest, officers searched the backpack and found a large amount of methamphetamine inside of five plastic bags.   Mr. Hood does not challenge the legality of his arrest and the Court is satisfied that officers had probable cause to arrest him.

The second inquiry into the validity of a search incident to arrest is "whether the actual arrest was too remote from the search." Id. at 1045-46. Here, the search took place immediately following Mr. Hood's arrest.

A search incident to arrest may include "the arrestee's person and the area 'within his immediate control'– construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969).[1] *See United States v. Delay*, 121 Fed. Appx. 359, 362 (10th Cir. 2005)(in *Chimel*, "the Supreme Court held that an arresting officer may search the arrestee's person to discover and remove weapons and to seize evidence to prevent their concealment or destruction and, in line therewith, he could also search the

---

[1]Since *Chimel*, case authority makes clear that neither a showing of officer safety or preservation of evidence is necessary to justify a search incident to arrest. *See e.g. United States v. Robinson*, 414 U.S. 218, 235 (1973)(rejecting suggestion that "there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority" to conduct a search incident to arrest).

areas 'within the "immediate control of the person arrested,' which includes the room in which the arrest occurs").[2]

Officer Watanabe testified at trial that when Mr. Hood arrived at Stacy Wilbert's home, he and Officer Haney went into the bathroom to wait. When Mr. Hood entered the house and came into the living room area, the officers came up behind him. Mr. Hood was carrying a backpack. Officers grabbed the backpack, and Mr. Hood stated: "I am f_ _ked". Trial Tr. at 63.

Officer Haney testified at trial that because Mr. Hood arrived at a different door than expected, he and Officer Watanabe quickly hid themselves in the bathroom. He saw Mr. Hood enter into the living room. Officer Haney noticed that he had left his police radio on the kitchen table. Hr. Hood walked towards the kitchen table, took off his backpack and sat it down next to the police

---

[2]For examples where briefcases, bags and backpacks have been validly search incident to arrest, *see e.g., United States v. Ivy*, 973 F.2d 1184, 1187 (5th Cir. 1992)(search of closed briefcase within suspect's reach valid as incident to arrest), *overruled on other grounds by United States v. Thompson*, 122 F.3d 304 (5th Cir. 1997); *United States v. Johnson*, 846 F.2d 279, 282-84 (5th Cir.)(same), *cert denied*, 488 U.S. (1988); *United States v. Herrera,* 810 F.2d 989, 900-91 (10th Cir. 1987)(same); *United States v. Maldonado-Espinosa*, 968 F.2d 101, 104 (1st Cir. 1992)(search of carry-on bag placed on a table next to suspect valid as incident to arrest because it was within reach of arrestee), *cert. denied*, 507 U.S. 984 (1993); *United States v. Pittman-Wright*, No. CR 11-00901 WHA, 2012 WL 1815599 (N.D. Cal. May 17, 2012)(search of backpack seated next to defendant on bench where he was seated valid as search incident to arrest); *Hickson v. Marina Associates*, No. Civ. 08-2407 NLH/KMW, 2012 WL 1041214 (D.N.J., March 28, 2012 (search of casino patron's bag by police officer was search incident to lawful arrest).

radio. Officer Haney then walked out of the bathroom, showed Mr. Hood his badge, identified himself as a police officer and placed handcuffs on Mr. Hood. Trial Tr. at 105.

Although the testimony of the two officers varies slightly, it is of no import. According to Officer Watanabe, the backpack was grabbed from Mr. Hood as he was taken into custody. Therefore the backpack was in Mr. Hood's immediate control. And according to Officer Haney, Mr. Hood sat the backpack down on the kitchen table and then was confronted by police and taken into custody. Therefore the backpack was in an area within his immediate control. Because Mr. Hood's backpack was in his control or in an area within his immediate control, its search, which took place immediately upon his arrest, was subject to the search incident to arrest warrant exception. "[C]ounsel is not ineffective for failing to make a motion that would not succeed." *Delozier v. Simmons*, 531 F.3d 1306, 1323 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 2058 (2009). Therefore, Mr. Hood's counsel was not constitutionally deficient for failing to move to suppress the drugs found in the backpack.

A police officer may also conduct a search of an arrestee to inventory possessions in accordance with established departmental inventory procedure. *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983). The purpose of an inventory search is to "deter theft by and false claims against its employees and preserve the security of

the station house." *Id.*   Even assuming, arguendo, that officers did not conduct a valid search of Mr. Hood's backpack incident to his arrest, it seems likely that the contents of the backpack inevitably would have been discovered when the backpack was inventoried at the police station. *See Nix v. Williams*, 467 U.S. 431, 447 (1984)(the inevitable discovery doctrine permits the introduction at trial of evidence obtained during an illegal search "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police").

### 2.  Disclosure regarding Life Sentence

Mr. Hood next asserts that his right to effective assistance of counsel was violated by his attorney's failure "to fully and adequately advise him regarding the likelihood of a life sentence if he were convicted at trial." Mem. Supp. at 22. Mr. Hood states that he did not understand that life in the federal system really meant life, as compared to the state system where he knew persons sentenced to a life in prison,  yet served nothing close to a lifetime.  In  short,  "Defendant  had  that  [sic]  incorrect understanding of the consequences of a life sentence in the federal system, and counsel never informed him otherwise."  Reply at 4-5. Mr. Hood also suggests that his counsel was overly optimistic about a positive outcome at trial.

"The decision of whether to accept a plea agreement lies ultimately with the defendant and cannot serve as a basis for an ineffective assistance of counsel claim." *United States v. Lazcano-Villalobos*, 33 Fed. Appx. 927, 928 (10th Cir. 2002). Mr. Hood acknowledges that he was aware of the plea discussions and that the decision to accept any plea offer was left to him. He further acknowledges that he "knew the charges carried a potential life sentence." Reply at 4. Nevertheless, Mr Hood declined to pursue any plea offer.

In any event, as noted, counsel's performance must fall below an objective standard of reasonableness to be considered deficient. Because it is objectively unreasonable for counsel to know that Mr. Hood's subjective understanding of a life sentence was something other than life in prison, his counsel's performance was not deficient.

### 3. Not Calling Witnesses at Trial

Mr Hood next contends that his counsel's performance was constitutionally deficient because his counsel failed to call any witnesses at trail, including his retained toxicology expert, Dennis Crouch. Mr Hood urges that "[u]nder the circumstances, when there was missing evidence, commingled evidence, evidence used for K-9 testing, etc., a toxicology expert was necessary to explain the magnitude of the evidentiary debacles in this case." Mem. Supp. at 27.

The Court disagrees.  "Generally, the decision whether to call a witness rests within the sound discretion of trial counsel." *Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir.), *cert denied*, 525 U.S. 950 (1998). Here, Mr. Hood's trial counsel through cross-examination, challenges to evidence, and argument to the jury placed his theory of the case before the jury.  Mr. Hood raised similar arguments on direct appeal[3], to which the Tenth Circuit noted the following:

> Mr. Hood's defense turned in large part on the theory that the police had corruptly conspired to add the methamphetamine found in Ms. Wilbert's home to that found in Mr. Hood's backpack in order to subject him to the enhanced criminal penalty associated with the possession of fifty or more grams of methamphetamine.  To be critical to that defense, the lost or destroyed evidence would have to be, at the very least, favorable to Mr. Hood (e.g. reveal Ms. Wilbert's fingerprints on the destroyed plastic bags).  But as Mr. Hood concedes, it was not apparent "whether the evidence would favor the government or the defendant." ... Furthermore, Mr. Hood had ample opportunity to advance his defense theory before the jury in other ways. As the government details in its brief, defense counsel extensively cross-examined witnesses regarding whether the drugs obtained from Mr. Hood and Ms. Wilbert were kept separate or (illicitly) combined.  Hr. Hood's counsel challenged the handling of evidence and the chain of custody, and also vigorously argued the conspiracy theory before the jury.  Thus, the jury was fully apprised of the nature of Mr. Hood's defense, thereby reducing, or perhaps even eliminating,

---

[3]*See United States v. Hood*, 615 F.3d 1293, 1298 (10th Cir 2010), *cert. denied*, 131 S. Ct. 1546 (2011)("More specifically, Mr. Hood challenges law enforcement's destruction of the plastic bags found in his backpack, law enforcement's combination of the individually bagged methamphetamine into one aggregate amount of drugs, and its decision to send the methamphetamine to the K-9 training unit").

any prejudice that might otherwise flow from the absence
of the destroyed evidence.

*United States v. Hood*, 615 F.3d 1293, 1300 (10th Cir 2010), *cert.*
*denied*, 131 S. Ct. 1546 (2011).

The Court further notes that when asked, after the government
had rested its case at trial, if he had any witnesses, defense
counsel responded:

MR. WALL: Your Honor, I believe that Mr. Hood is satisfied
with the evidence.

MR. HOOD: Yes.

THE COURT: Very well.

Trial Tr. at 254.

Mr. Hood has failed to establish that his counsel's decision
not to call Mr. Crouch was unsound.   Therefore, the Court finds
nothing constitutionally deficient about defense counsel not
calling Mr. Crouch to testify as an expert witness at trial.

### 4.   Cumulative Error

Mr. Hood's cumulative error position is rejected.[4]  Regarding
cumulative error, the Tenth Circuit instructs as follows.

---

[4]Mr. Hood asserts that "the lost evidence and bizarre chain of
custody as articulated by expert Dennis Crouch, the use of the
drugs in question for canine training, the failure to file a
suppression motion based upon clear Fourth Amendment violations,
the failure to call any witnesses at trial, and the lack of a
thorough plea bargain analysis by counsel, more than satisfy the
cumulative error doctrine to warrant a reversal or new trial."
Mem. Supp. at 35.

> "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990). The "Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999)(internal quotation marks omitted); *see also Workman v. Mullein*, 342 F.3d 1100, 1116 (10th Cir. 2003)(noting that cumulative error analysis requires at least two errors).

*United States v. Franklin-El*, 555 F.3d 1115, 1128 (10th Cir. 2009). Because the Court finds no errors as asserted by Mr. Hood, his position must be rejected.

## IV CONCLUSION

For the reasons stated, Mr. Hood's motion to vacate, set aside or correct his sentence pursuant to 28 U.S. C. § 2255 (Doc. #1) is denied.

IT IS SO ORDERED.

DATED this 28t day of June, 2012.

BY THE COURT:

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT